S. B. AULTMAN v. KATE W. WILCOX, *et vir*.

188 So. 800
Opinion Filed May 16, 1939
Rehearing Denied June 2, 1939

*Lawrence Rogers* and *G. P. Garrett,* for Appellant;

*Ellis F. Davis* and *O. S. Thacker,* for Appellee.

PER CURIAM.—Appeal brings for review final decree in foreclosure. The mortgage was given to secure the payment of ten thousand dollars in equal annual payments over a period of ten years evidenced by ten notes dated May 8th, 1923, for $1,000.00 each with interest at 8% per annum until paid. The mortgage *inter alia* contained the following provisions:

"And the said mortgagors, for themselves, and their heirs, legal representatives and assigns, hereby covenant and agree:

"1. To pay all and singular the principal and interest and other sums of money payable by virtue of said promissory notes and this deed, or either, promptly on the days respectively the same severally come due.

"2. To pay all and singular taxes, assessments, levies,

liabilities, obligations and incumbrances of every nature on said described property each and every, and if the same be not promptly paid the said mortgagee, his heirs, legal representatives or assigns, may at any time pay the same without waiving or affecting the option to foreclose or any right hereunder, and every payment so made shall bear interest from the date thereof at the rate of eight percent per annum.

"3. To pay all and singular the costs, charges and expenses, including lawyer's fees, reasonably incurred or paid at any time by said mortgagee, his heirs, legal representatives or assigns, because of the failure on the part of the said mortgagors, their heirs, legal representatives or assigns, to perform, comply with and abide by each and every the stipulations, agreements, conditions and covenants of said promissory notes and this deed, or either and every such payment shall bear interest from date at the rate of eight per cent per annum.

"4. To keep the buildings now or hereafter on said land insured in a sum of not less than TWO THOUSAND DOLLARS, in a company or companies to be approved by said mortgagee, and the policy or policies held by and payable to said mortgagee, his heirs, legal representatives or assigns, and in the event any sum of money becomes payable under such policy or policies, the mortgagee, his legal representatives or assigns, shall have the option to receive and apply the same on account of the indebtedness hereby secured or to permit the mortgagors to receive and use it, or any part thereof, for other purposes, without thereby waiving or impairing any equity lien or right under or by virtue of this mortgage, and may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose or any right hereunder, and each and every such payment shall bear interest from date at the rate of eight per cent per annum.

"5. To permit, commit or suffer no waste, impairment or deterioration of said property or any part thereof.

"6. To fertilize, cultivate, develop and maintain the grove and growing plants upon said land to the reasonable satisfaction of the mortgagee.

"7. To perform, comply with and abide by each and every the stipulations, agreements, conditions and covenants in said promissory notes and in this deed set forth.

"8. If any of said sums of money herein referred to be not promptly and fully paid within thirty days next after the same severally become due and payable or if each and every the stipulations, agreements, conditions and covenants of said promissory notes and this deed, or either are not duly performed, complied with and abided by, the said aggregate sum mentioned in said promissory notes shall become due and payable forthwith or thereafter at the option of the mortgagee, his heirs, legal representatives or assigns, as fully and completely as if the said aggregate sum of TEN THOUSAND DOLLARS was originally stipulated to be paid on such day, anything in said promissory notes or herein to the contrary notwithstanding."

On October 11, 1930, an extension agreement was entered into as follows:

### "Contract and Agreement

"This Agreement Made and entered into on this 11th day of October, A. D. 1930, by and between H. W. Wilcox, hereinafter called the party of the first part and Mary E. Aultman, and S. B. Aultman her husband hereinafter called the parties of the second part,

"Witnesseth: That for and in the consideration of the covenants, agreements and extensions herein provided for, the parties hereto have entered into this agreement as follows:

"WHEREAS, on the 8th day of May, A. D. 1923, the parties of the second part made, executed and delivered to the party of the first part a series of notes aggregating a total of TEN THOUSAND ($10,000.00) Dollars, representing part of the purchase price of certain lands conveyed by the party of the first part to the parties of the second part in Osceola County, Florida, which said notes were in a series of One Thousand ($1,000.00) Dollars each, and one maturing every year thereafter for a period of ten years; that said notes provided, according to their face, that the interest accumulations thereon would be payable as and when said notes respectively become payable; that the parties of the second part have been unable to pay off and discharge the amount due on Note No. 6, which is past due since May 8th, 1929, and that Note No. 7 is past due since May 8th, 1930, and which the parties of the second part are unable to pay, or the interest thereon, and the said parties of the second part desire an extension of the maturity of said notes and all subsequent maturing notes in said series.

"Now, THEREFORE, THIS INDENTURE WITNESSETH: That for and in consideration of an extension of the dates of maturity of said notes numbered Six to Ten inclusive, for the period of two years on each one of said notes in said series above referred to, that the parties of the second part agree as follows:

"That they will make and execute to the party of the first part a series of three notes aggregating Three Thousand and Eighty-two and 60/100 ($3,082.60) Dollars, maturing in two, three and four years from the 8th day of May, A. D. 1930, the first note in said series being for the sum of One Thousand Eighty-two and 60/100 ($1,082.60) Dollars, and maturing on May 8th, A. D. 1932, and the other two notes of One Thousand ($1,000.00) Dollars each, bearing same date, to-wit: May 8th, A. D. 1930, maturing one and two

years thereafter, respectively; that in further consideration of said extension, the parties of the second part agree that said notes shall bear interest from date at the rate of 8% per annum, payable annually and that the series of unpaid notes secured by the mortgage shall be and is hereby agreed to be amended to the effect that interest thereon from May 8th, A. D. 1930, shall become payable annually.

"That the parties of the second part further agree to and do hereby assign to the party of the first part as a further and additional security for said extension of indebtedness, all of their right, title and interest in a certain lease bearing date of August 20th A. D. 1926, made and executed by H. Gilbert and Maud Gilbert, his wife, as holders of a ninety-nine year lease upon a plot of ground being 50 feet square in Lot 4, Block 13 of the South Florida Railway Company's Survey of Kissimmee, Florida, to the Seaboard Oil Company, a Corporation, subject however, to a lien held thereon by the First National Bank of Kissimmee, Florida, to secure a loan made to the parties of the second part in the principal sum of Five Hundred ($500.00) Dollars, which loan the parties of the second part assume and agree to pay, and that the obligation of said loan shall in no wise be construed to be assumed or become obligatory upon the party of the first part. The terms of said lease, among other things, providing for an advance monthly rental of $125.00 to enure to the party of the first part from September 1st, A. D. 1931, to August 15th, A. D. 1932, and not less than $150.00 advance monthly rental from August 15th, A. D. 1932, to August 15th, A. D. 1936. The parties of the second part being interested in said lease as owners and holders of the fee simple title to the property covered thereby, and who are, according to the terms of said lease, the beneficiaries receiving the rentals accruing on account thereof, provided nevertheless that it is understood between

the parties hereto that all rentals on said lease have been paid off and discharged up to and including the 1st day of September, A. D. 1931.

"That it is also understood and agreed that said lease is hereby assigned solely for the purpose of providing additional security on obligations due by the parties of the second part to the party of the first part, and that until all of the indebtedness herein referred to as being due by the parties of the second part to the party of the first part shall have been paid off and discharged, the party of the first part shall receive as a credit upon said indebtedness all of the rental income provided for in said lease as credits on said indebtedness, whether for principal or interest due or to become due, and that as and when said indebtedness shall have been completely paid off and discharged and there remains any amount of balance due on account of the terms of said lease, the party of the first part agrees to surrender the same to the parties of the second part, who shall again become the owners and holders thereof.

"It is further understood and agreed that the series of three notes made by the parties of the second part to the party of the first part evidencing the sum of Three Thousand Eightty-two and 60/100 ($3,082.60) Dollars is for the unpaid interest and accumulations of the five unpaid notes in the series of Ten Thousand ($10,000.00) Dollars hereinbefore mentioned and described, and that the party of the first part agrees that all of said notes be endorsed by a memoranda to the effect that notes have been given for interest and accumulations thereon up to May 8th, A. D. 1930; that the parties of the second part agree as a part of the consideration for this agreement that they will hereinafter, on the maturity of any one of said notes, pay off and discharge all interest accumulations on said series of notes bearing date of May 8th, 1930, as well as the series of

unpaid notes of the original Ten Thousand ($10,000.00) Dollar issue, from the 8th day of May, A. D. 1930, and that in the event of the failure of the parties of the second part to pay off and discharge said notes at maturity or the interest thereon, the party of the first part shall be privileged to declare said notes and each of them in both series herein mentioned, due and payable and that it is the intention of the parties of the second part that the original mortgage bearing date of May 8th, 1923, shall be and continue a lien to secure the payment of all of the indebtedness mentioned and described in this agreement, whether evidenced by the first or second series of notes herein referred to, and that in such event the party of the first part shall be privileged to sell, transfer and assign either at private or public sale, the lease hereinbefore mentioned and described and assigned to the party of the first part by the terms hereof, and apply the proceeds from said sale to the payment and discharge of any sum or sums becoming due or remaining unpaid on account of the indebtedness evidenced in said series of notes aggregating Three Thousand Eight-two and 60/100 ($3,082.60) Dollars.

"It is further understood and agreed by and between the parties hereto that any amounts paid by the parties of the second part for and as a credit or credits on the several obligations herein provided for in the event the same shall not be sufficient to pay off and discharge all of the indebtedness then due, that the party of the first part shall have the option to apply such credit or credits of the series of unpaid Five Thousand ($5,000.00) Notes.

"The terms and conditions of this agreement shall extend to and become obligatory upon the heirs, executors, administrators and assigns of each of the parties hereto."

The mortgagee was, on default of mortgagor, required to pay taxes as reflected in the decree.

Default in the obligation again occurred. Mortgagee, for value, assigned the mortgage and unpaid notes to the appellee. The assignment covers the mortgage, "Together with the notes or obligations described in said mortgage, and the moneys due and to become due thereon, with interest from the 8th day of May, 1923."

This assignment was sufficient to cover the item due for the payment of taxes by the mortgagee.

The record shows that at the time of the execution of the extension agreement the notes and probably the mortgage were hypothecated to a bank as security for a debt owed by the mortgagee to the bank. This is of no moment because such hypothecation did not preclude the execution of the extension agreement.

It is contended that the provision in the extension agreement concerning interest accumulated in the sum of $3,082.60 was unenforceable because not all of such amount had actually accrued as interest, and because the agreement contemplated the payment of interest on this item which was based on interest accruing upon the original notes. The contention is untenable because the provision was a part of the bargain and contract for forebearance and extension of time in which to pay the defaulted obligation. The parties being *sui juris,* absent fraud, could enter into such agreement as part of a contract making the same binding on all parties.

On consideration of the whole record, we find no reversible error. So the decree is affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.